IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RONNIE J. FONSECA,            §
                             §
        Plaintiff,           §
                             §
v.                           §        CIVIL ACTION NO. H-06-3582
                             §
MICHAEL J. ASTRUE,           §
COMMISSIONER OF THE SOCIAL   §
SECURITY ADMINISTRATION,     §
                             §
        Defendant.           §

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the Court in this social security disability appeal are Defendant's Motion for Summary Judgment (Document No. 11), and Plaintiff's Motion for Summary Judgment. (Document No. 13). Having considered the motions, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and the matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings.

I.      **Introduction**

Plaintiff Ronnie Fonseca ("Fonseca") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405 (g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied his application for disability insurance benefits through June 30, 2004, the date Fonseca's

disability insured status expired.  Fonseca argues that the Administrative Law Judge's ("ALJ") decision is flawed because: (1) the ALJ improperly failed to consider testimony of a medical expert that Fonseca is disabled; (2) the ALJ did not properly follow Social Security guidelines in assessing his Residual Functional Capacity ("RFC"); (3) and the ALJ failed to follow the pertinent regulation pertaining to Fonseca's subjective complaints.  The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision and that the decision comports with applicable law.   In particular, the Commissioner asserts that the ALJ properly assessed Plaintiff's RFC, and that the ALJ properly relied upon a vocational expert's testimony in reaching its decision.

## II.    Administrative Proceedings

On October 23, 2002, and again on July 29, 2003, Fonseca applied for disability insurance benefits, claiming an inability to work since March 26, 2000, because of back pain stemming from back surgery. (Tr. 55-62).  The Social Security Administration denied both applications.  (Tr. 27-31, 32-36).  Fonseca's Request For Reconsideration was denied on December 2, 2003.  (Tr. 38).  After that, Fonseca requested a hearing before an ALJ.  (Tr. 43).  The Social Security Administration granted his request and the ALJ, Richard Abrams, held a hearing on November 8, 2004.  (Tr.  47, 400).  On January 26, 2005, the ALJ issued a decision finding Fonseca not disabled.  (Tr.15).

Fonseca sought review of the ALJ's adverse decision with the Appeals Council on February 2, 2005.  (Tr. 11).  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the

ALJ's actions, findings or conclusions; or (4) a broad policy or procedural issue may affect the public interest.  20 C.F.R. § 404.970; 20 C.F.R. § 416.1470.  On November 25, 2005,  the Appeals Council denied Fonseca's request for review, and the ALJ's January 26, 2005 decision thus became final.  (Tr. 5).

Fonseca filed a timely appeal of the ALJ's decision.  Fonseca then filed a Motion for Summary Judgment and Memorandum in Support.  (Document Nos. 13 & 14). The Commissioner also filed a Motion for Summary Judgment and Memorandum in Support.  (Document Nos. 11 & 12). This appeal is now ripe for ruling.

## III.    Standard of Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing" when not supported by substantial evidence.  42 U.S.C. § 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence

preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity."  *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs

5

are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Legget*, 67 F.3d at 564**.**

In the present case, the ALJ determined that Fonseca was not disabled at step five. In particular, the ALJ determined that Fonseca was not presently engaged in substantial gainful work (step one); that Fonseca's degenerative disc disease, status post laminectomy, history of carpal tunnel syndrome, and joint arthritis of the shoulders were severe impairments (step two); that these conditions, when considered both singly and in combination, did not meet or equal an impairment listed in Appendix 1 of the regulations (step three); that Fonseca's impairments precluded him from doing his past work (step four); and that Fonseca's impairments did not prevent him from performing some substantial gainful activity, taking into consideration his age, educational background, past work experience and RFC (step five). In this appeal, the Court must determine whether substantial evidence supports that step five finding, and whether the ALJ used the correct legal standards in arriving at that conclusion.

## V.    Discussion

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## A.  Objective Medical Facts

Fonseca has a history of injuries to his shoulders, knees, back and hands.  The objective medical evidence shows that he suffers from bilateral acromioclavicular joint arthritis of the shoulders, status post laminectomy, degenerative disc disease, and a history of carpal tunnel syndrome.  Fonseca's injuries and subsequent treatments are discussed below by body part.

### 1.  Shoulders & Knees

On August 19, 1999, Fonseca injured his left shoulder and left knee at work due to a fall on his left side.  (Tr. 160).  Concerned about continuing mild pain, Fonseca saw Dr. Howard Crockett on August 31, 1999.  *Id.*  Dr. Crockett's examination revealed a small abrasion on the left knee, but full range of motion and stable ligaments in the knee.  *Id.*  An examination of Fonseca's left shoulder revealed a full range of motion and no bruising.  *Id.*  X-rays of Fonseca's left knee and left shoulder on September 17, 1999 were unremarkable.  (Tr. 159).  An October 5, 1999, arthrogram (joint x-ray) of the same areas came back normal.  (Tr. 158).  On March 14, 2000, Dr. Crockett diagnosed Fonseca's knee and shoulder strains as "resolved."  (Tr. 153).

In order to help diagnose his continued shoulder pain, a MRI of Fonseca's right shoulder was taken on July 16, 2004.  The MRI revealed mild impingement and arthritis in the acromioclavicular joint, but no evidence of a rotator cuff tear or tendinitis.  (Tr. 294, 384).  A month later on August 18, 2004, a MRI was taken of Fonseca's left shoulder which revealed mild impingement and arthritis in the acromioclavicular joint, but no major rotator cuff tear.  (Tr. 300, 386).  On August 26, 2004, orthopedic surgeon Dr. Michael Dean recommended arthroscopy, subacromial decompression, distal clavicle excision, and possible repair of cuff or labrum for the left shoulder.  The arthroscopy was

7

denied by Mr. Fonseca's insurance company.  (Tr. 384, 386).

## 2.  Back

On August 19, 1999, Fonseca injured his lower back at work due to a fall on his left side. (Tr. 160).  Concerned about continuing pain, Fonseca saw Dr. Howard Crockett on August 31, 1999. Dr. Crockett's examination revealed reversible lumbar lordosis (excessive curvature of the lower back), with no tenderness or bruising. *Id.*  An x-ray of Fonseca's lumbosacral spine (lower back region) on September 17, 1999 was unremarkable.  (Tr. 159).  Fonseca had another on-the-job back injury on March 26, 2000.  He was diagnosed by Dr. Crockett with a herniated nucleus pulposus (slipped disk) on March 27, 2000 and referred to Dr. David Tomaszek.  (Tr. 152).  Because of Fonseca's back pain, Dr. Tomaszek performed a lumbar epidural root block procedure on May 17, 2000, and a lumbar steroid injection on June 26, 2000.  (Tr. 147, 150-51).

On December 5, 2000, Fonseca underwent an L4-5 laminectomy performed by Dr. Tomaszek.  (Tr. 122).  Fonseca complained of recurring back and leg pain after the surgery, and a MRI was performed on February 1, 2001, which revealed scar tissue and recurrent disc herniation at the L4-5 level.  (Tr. 139).  On April 26, 2001 and again on May 24, 2001, Dr. Tomaszek performed lumbar steroid injections in an attempt to alleviate Fonseca's intermittent back pain.  (Tr. 133, 134).  Dr. Tomaszek referred Fonseca to Dr. Kenneth M. Alo, who performed several pain blocks to varying success.  (Tr. 220, 223).  Dr. Alo then performed a discography on February 4, 2002, which revealed disc degeneration at both L4-5 and L5-S1.  (Tr. 123, 208).

Dr. Alo performed decompression nucleoplasty on Fonseca's L4-5 disc area on April 15, 2002, which improved his back pain symptoms.  (Tr. 196, 199).  The same procedure was repeated on July 22, 2002, with similar success.  (Tr. 190, 192).  Fonseca had several follow-up visits with

8

Dr. Alo through August, 2004, in which he expressed pain symptoms related to his back, but he underwent no new procedures during that time.  (Tr. 173, 177, 238, 245, 253).

### 3.  Hands

Fonseca underwent several surgeries for carpal tunnel syndrome in the early 1990's.  (Tr. 415).  The objective medical evidence regarding this condition is sparse in the record.  (Tr. 122, 151, 226).  Upon this record, the objective medical effect of this prior surgery is unclear.

Having examined the objective medical evidence in the record, it is clear that Fonseca suffers from bilateral acromioclavicular joint arthritis of the shoulders, status post laminectomy, degenerative disc disease, and a history of carpal tunnel syndrome.  However, none of the objective medical facts seem to be sufficient, standing alone, to establish that Fonseca is disabled as defined by the Act.  Therefore, the objective medical evidence factor supports the ALJ's decision.

### B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

The medical opinions in the record include: (1) three Residual Functional Capacity Assessments; (2) the opinions of Fonseca's treating physicians; and (3) the opinion of Dr. Kendall Hamilton, the orthopedic surgeon who testified at the hearing. Dr. Kelvin Samaratunga completed a Residual Functional Capacity Assessment (RFC) on February 18, 2003, in which he found that Fonseca could: occasionally lift and/or carry twenty pounds; could frequently lift and/or carry ten pounds; stand and/or walk about six hours in an eight hour workday; sit for a total of six hours in an eight hour workday; frequently or occasionally climb, balance, kneel, crouch, and crawl; and had no manipulative, visual, communicative, or environmental limitations. (Tr. 162-69). A second RFC assessment that was done on September 8, 2003, by Dr. Frederick Cremona, and a third RFC by Dr. John Durfor on December 1, 2003, yielded the same results. (Tr. 229-36).

Dr. Howard Crockett treated Fonseca for his left knee injury from August 31, 1999 to August 23, 2000. (Tr. 146, 160). His initial exam of the left knee revealed "some mild puffiness" but "full range of motion," and the x-rays were "unremarkable." (Tr. 159). On March 14, 2000, Dr. Crockett noted that the knee strain was "resolved." (Tr. 153). A subsequent examination of both knees showed "no instability" and "full range of motion." (Tr. 146). Dr. David Tomaszek treated Fonseca for his back pain from May 17, 2000 until February 12, 2002, and performed Fonseca's laminectomy. (Tr. 128, 150). Post laminectomy, Dr. Tomaszek prescribed a "therapy regimen" (Tr. 141) and steroid root blocks (Tr. 135) for Fonseca's continued pain.

Dr. Kenneth Alo and Dr. David Singleton treated Fonseca for his back and shoulder pain from September 27, 2001 through August of 2004. In their periodic examinations of Fonseca, the doctors diagnosed him with "intractable back and lower extremity pain" and "underlying discopathy." (Tr. 185, 192, 243). The "Pain Review of Systems" consistently showed Fonseca's

10

"pain altered" abilities to sit, walk, ride, remain immobilized, mentate, concentrate, and perform repetitive motion activities and activities of daily living. (Tr. 188, 196, 253). On February 17, 2003, under "Pain Review of Systems" in an Office Note, Dr. Alo notes that Fonseca is "unable to return to gainful employment. He is disabled at this point." (Tr. 179-80). Subsequent consultations by Dr. Alo do not employ this language.

Dr. Henry Hamilton, a board certified orthopedic surgeon, testified at the hearing after reviewing the medical evidence in the record. (Tr. 55, 437). Dr. Hamilton testified that Fonseca's physical condition included "carpal tunnel syndrome," "disc herniation at L4, 5, and a bulge or protrusion at L5, S1," "a laminectomy in December of 2000, at L4, 5," and "bilateral acromioclavicular joint arthritis, both shoulders." (Tr. 438). He testified that Fonseca had "a relatively normal gait." (Tr. 439).

In his written decision, the ALJ found that none of Fonseca's impairments, either singly or in combination, met or equaled a listing. However, questioning of Dr. Hamilton by Fonseca's attorney regarding the listing requirement of positive straight-leg raising, calls this conclusion into question:

Q: I'm just wondering, you know. Is--okay. Let's just say, there are notes where [the straight-leg raising is] normal. Is it alternating between normal and abnormal, or is it--was it normal for a time and became abnormal?

A: It seems to have changed to for the worse.

Q: Okay. So then just according to the listing here, if you've got the--now, it seems like you have all the elements of the listing involved here. At least at some point.

A: But not consistently maybe. But yes, it would. The straight leg raising test is not tested. It doesn't mention testing. It's sitting and supine.

Q: Well, yeah.

A: It doesn't do it either way.  But the listing requires both as I read it.

Q: Okay.  So what I see--I mean, if anything what you've got is something that wasn't tested that's--in other words, ...of the elements that are tested, they are abnormal or they're positive.  And we have one or two things that aren't--[tested]

A: To a degree.  Yes.

(Tr.  445-46).  Thus, Dr.  Hamilton seems to concede it is possible Fonseca would have met the listing requirements had Fonseca's straight-leg raising been tested properly.  Later in the testimony Dr. Hamilton was asked whether Fonseca meets or equals a listing, when parts of the medical record are combined together.  Hamilton answered:  "I would still say not.  But, I think it does come close. I, I think it--his subjective complaints are the worst problems.  And I think it would work to assess his pain complaints as being entirely credible.  Then he would be unable to do even sedentary work." (Tr.  447-48).

The ALJ also determined that Fonseca had the residual functional capacity for light work. (Tr. 18).  However, the ALJ did not mention Dr.  Alo's February, 17, 2003 opinion that Fonseca was "disabled at this point."  (Tr.  279-80).  The ALJ also writes "Dr.  Hamilton testified that the claimant would have a residual functional capacity for light work."  (Tr.  18).  This is a mischaracterization of Dr.  Hamilton's testimony, and the ALJ relied on this mischaracterization to support his conclusion that Fonseca was not disabled.  In doing so, the ALJ erred.  *See Winkowitsch-Smith v.  Barnhart*, 113 Fed.  Appx.  765, 767 (9th Cir.  2004) ("An ALJ cannot substitute his own opinion for that of the medical experts by disregarding evidence in the record."); *see also Mahoney v.  Apfel*, 48 F.Supp.2d 237, 244-45 (E.D.N.Y.  1999) (concluding, in a case in which the ALJ misconstrued and mischaracterized the testimony of the testifying medical expert, that the "ALJ was not entitled to substitute his own opinion" for that of a medical expert).  Because the ALJ failed to

properly consider the opinions of Fonseca's treating and examining physicians, and that of the medical expert, this factor weighs against the ALJ's decision.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled.  *Cook*, 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record.  *Id.*  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'"  *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant.  *Hames*, 707 F.2d at 166.

Fonseca testified at his hearing before the ALJ regarding his pain and physical activity levels. He testified that he has pain in his lower back, legs and feet; burning on the right side of his back; that he uses a cane; and that his right leg gives out on him.  (Tr. 408-09).  He said that he lies down

five hours a day.  (Tr. 412).  He stated that he has pain in his shoulders, can reach even with his shoulder with the left arm, and higher with the right arm.  (Tr. 413-14).  He stated that his hands cramp a lot.  (Tr. 415).  He said that his medicines help his pain but leave him feeling drunk and woozy.  (Tr. 420-21, 423).  He said that he can bend over a little and squat, but that it hurts to do so. He can drive short distances.  (Tr. 418-19).  He agreed that he can dress himself, take a shower, prepare meals, and walk two blocks.  (Tr. 423).  After Fonseca testified, his wife Iva testified.  She said that he can't sit or stand for very long, and that he lays down multiple times during the day.  (Tr. 428-29).  He does not do any housework, but does take out the trash.  (Tr. 434).  She noted that she sometimes helps him get dressed.  (Tr. 430).

Credibility determinations, such as that made by the ALJ in this case in connection with Fonseca's subjective complaints of pain and total disability, are generally within the province of the ALJ to make.  *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert denied*, 514 U.S. 1120 (1995).  *See also Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989) (claim of disability less credible when no physician on record has stated that claimant was physically disabled). Here, the ALJ found in his report that "claimant's allegations of total disability are not fully credible. None of the claimant's doctors have said he is disabled." (Tr. 18).  Upon examination of the record, however, treating physician Dr. Alo did in fact state on February 17, 2003, that Fonseca was "unable to return to gainful employment.  He is disabled at this point."  (Tr. 179-80).  In addition, as previously noted, Dr. Hamilton considered Fonseca's subjective complaints of pain to be credible: "... I think it -- his subjective complaints are the worst problems.  And I think it would work to assess

14

his pain complaints as being entirely credible.  Then he would be unable to do even sedentary work."
(Tr.  447-48).  Because the record shows that the ALJ failed to properly support his credibility
determination, this factor weighs against the ALJ's decision.

### D. Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history and
present age.  A claimant will be determined to be disabled only if the claimant's physical or mental
impairments are of such severity that he is not only unable to do his previous work, but cannot,
considering his age, education, and work experience, engage in any other kind of substantial gainful
work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

As of the date of the last administrative hearing, Fonseca was 44 years old, had a 10th grade
education, and had past work experience as a dump truck driver, backhoe operator & carpenter.  (Tr.
405-06).  The vocational expert ("VE") at the hearing testified that Fonseca had no transferable skills
from these jobs to other similar work.  (Tr. 451).  Based on his determination of Fonseca's residual
functional capacity, the ALJ then posed a hypothetical to the VE about Fonseca's ability to engage
in other work:

> ALJ: Okay.  Let me give you a hypothetical example.  A claimant of this claimant's
> age, educational background, and job experience at the light exertional level.  [Then]
> let me give you a couple of restrictions to light.  One would be limited, not no, but
> limited stooping, twisting, crouching, kneeling, climbing of stairs or ramps.  One
> would be no crawling, balancing or climbing of ladders or scaffolding materials.
> Another would be an avoidance of heights, vibrations and dangerous machinery
> operation.  And another would be limited, not no, but limited reaching overhead with
> the, with the...left nondominant arm.  And with that put a sit/stand option.  So we
> have with that--now, I'll take that back--we have five restrictions.
>
> VE: Five

ALJ: All right.  Okay.  With those restrictions at the light level, are there any jobs that such a claimant could perform?

VE: Light unskilled, would be such as an information clerk.  Which is light unskilled. A survey worker, which is light unskilled.  And a general clerk, which are light unskilled.

ALJ: Okay.  Give me numbers in the local area for the --

VE:  Approximately 1500.

ALJ:  For the, for the info clerk?

VE:  Of each, of each one of them...and the clerk positions in Harris County and the four surrounding counties.  And times ten, for the nation.

(Tr. 451-53).  Using the same hypothetical posed above, the ALJ then asked the VE to include a

"sedentary level" restriction in her analysis.  (Tr. 453).

VE:  Well, basically at the sedentary level, it eliminates most of those things anyhow.  So we really come down to the -- a sit/stand option.  And there are sedentary unskilled jobs with sit/stand options.  Such as <u>DOT</u> calls those surveillance monitors, but now they're called security monitors.  Which is sedentary, unskilled.  Call out operators, which are sedentary and unskilled.... Or a charge account clerk.  Say it would be a sit/stand option, which is sedentary, unskilled.

ALJ:  Ok.  So we have a surveillance monitor.  What are the numbers on that?

VE:  With, with approximately 2500.  Those have increased, and in Harris County and the four surrounding counties.  Charge account clerk is 800 in Harris County and the four surrounding counties.  Call out operator, is 1,000 plus it says in Harris County and the four surrounding counties.

ALJ:  And are these times ten or more than that?

16

VE:  Times ten nationwide.

(Tr. 453-54).  Because the ALJ did not properly consider the expert medical opinions in the record regarding Fonseca's subjective complaints of pain, the ALJ's RFC determination is not supported by substantial evidence.  Moreover, because the ALJ's RFC determination is not supported by substantial evidence, the education, work history and age factor also does not support the ALJ's decision.


**VI.     Conclusion and Order**

Based on the foregoing, it is the opinion of this court that the ALJ erred (1) in failing to properly consider the opinions of Fonseca's treating and examining physicians and the medical expert, and (2) in failing to support his credibility determination.  Those errors resulted in a decision that is not supported by substantial evidence.  Therefore, this Court

ORDERS that Plaintiff's Motion for Summary Judgement (Document No. 13) is GRANTED, Defendant's Motion for Summary Judgment (Document 11) is DENIED, and this matter is REMANDED to the Commissioner of the Social Security Administration for further proceedings, including a proper consideration of the expert medical opinions and Fonseca's subjective complaints.

Signed at Houston, Texas, this 7th  day of  August , 2007.


Frances H. Stacy
United States Magistrate Judge